UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JORDAN SETSER, individually,<br><br>            Plaintiff,<br><br>    v.<br><br>IDAHO HOME HEALTH & HOSPICE/<br>LHC GROUP, LLC; and<br>CHRISTOPHER EVANS, in his<br>individual capacity,<br><br>            Defendants. | Case No. 4:12-CV-00444-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

        Pending before the Court in the above-entitled matter is Defendant Idaho Home

Health & Hospice/LHC Group, LLC's (LHC) Motion for Summary Judgment (Dkt. 28)

and Motion to Strike (Dkt. 39) and Plaintiff's Motion to Strike (Dkt. 43).  Having fully

reviewed the record, the Court finds that the facts and legal arguments are adequately

presented in the briefs and record.  Accordingly, in the interest of avoiding further delay,

and because the Court conclusively finds that the decisional process would not be

significantly aided by oral argument, this matter shall be decided on the record before this

Court without oral argument.

**MEMORANDUM DECISION AND ORDER - 1**

**BACKGROUND**

Plaintiff Jordan Setser (Setser) was hired as a registered nurse (RN) for LHC on February 4, 2011 for LHC's home health care services branch in Rupert, Idaho.  Setser started working around February 24, 2011.   LHC is headquartered in Louisiana and has approximately 8,500 employees in twenty-six states.  Chris Evans (Evans) was the branch manager and was the person who hired Setser.  He was also her supervisor.  There were not any human resources personnel located in the Rupert branch office.

Setser was provided an Employee Handbook and she acknowledged that she had read and understood LHC's Standards of Behavior and the Employee Handbook prior to her actually starting work. (Declaration of Renae Delahoussaye, Dkt. 31-2, Ex. 1). The Employee Handbook has a section entitled "Harassment" which provides as follows:

> LHC Group prohibits all forms of harassment of its employees by any other employee or third party.  Accordingly, all employees are asked to conduct themselves in a professional manner at all time and refrain from engaging in conduct which might be construed as offensive or harassing to others.  Prohibited conduct includes any form of physical or verbal abuse or harassment on any basis including race, sex, age, religion, disability, national origin or any other protected status.
>
> In order to avoid any potential problems or misunderstandings in this area, employees are asked to conduct themselves in a professional and courteous manner at all times, and those who find the conduct of others offensive should immediately make it clear to the offending person that the find the conduct offensive.

**MEMORANDUM DECISION AND ORDER - 2**

> **Any employee who feels he/she has been subjected to harassment in violation of this policy is encouraged to immediately and confidentially report it to a manager or Human Resources.**  Incidents of alleged harassment will be promptly investigated as confidentially as possible and appropriate action will be taken. If management is not informed of conduct which violated this policy, it cannot address such conduct.
>
> If LHC Group determines that an employee is guilty of harassing another individual, appropriate action will be taken against the offending employee, up to and including termination of employment.  If harassment is engaged in by a person other than an employee, management will attempt to take appropriate action to remedy the problem.
>
> LHC Group prohibits any form of retaliation against any employee for filing a bona fide complaint under this policy or for assisting in a complaint investigation.

*Id.*, Ex. 2 (emphasis added).

It is undisputed that Setser also attended new employee orientation training with a Rupert office co-worker on April 4, 2011.  *Id.*, Ex. 3. It is unclear from the record the method this training was provided – in person, online, webinar, etc.  Regardless of the form, it is undisputed Setser signed the attendance sheet for the training.  The training was taught by Employee Relations Coordinator Ms.  Delahoussaye and included training on the sexual harassment policy.  (Dec. of Delahoussaye, Dkt. 31, p.3, ¶ 9).

When Setser started work, Evans invited Setser and another new employee Tiffany Sanchez to lunch.  Ms. Sanchez had a conflict and did not attend the lunch.  At the lunch, Setser claims Evans told her in the future he would like to see her become a lead and supervise others.  Evans also discussed the fact that Idaho is a right to work state, so he did not need a reason to let Setser (or any employee) go.  There is nothing in the record to

**MEMORANDUM DECISION AND ORDER - 3**

suggest these comments at lunch were made to threaten Setser as no sexual harassment had occurred at that point in time.  Moreover, the "at will" employment status was acknowledged by Setser when she initialed that she had received and read the Employee Handbook. (Dkt. 31-2, Ex. 1).

There are three specific alleged incidents of sexual harassment by Evans.  The first incident was on March 15, 2011 when Setser was completing an online computer training course and Evans came in the room, began rubbing Setser's shoulders, then started disparaging his wife and finally leaned in and kissed Setser.  Setser told Evans that was not right and she left the building shortly after the incident.  The next day, she again told Evans his conduct was not appropriate.

The second incident occurred on or about April 12, 2011 when Setser was in Evans' office discussing how disappointing her birthday had been the day before.  Evans came around his desk, grabbed Setser's hands, pulled her close for a hug, and tried to kiss her. Setser told Evans again this conduct was wrong and asked him what his wife would think.  Setser testified Evans tried to kiss her again, tried to put his hand up her shirt and also tried to unbutton her pants in addition to pointing to his crotch and making inappropriate comments.[1]  Setser broke away, stepped around him and left the office.

The third incident was on or about May 3, 2011.  Setser was doing some

---

[1]LHC objects to the inclusion of these facts that were included in the allegations in the Complaint, but Setser did not bring up during her deposition.  Setser restated these additional details of the second incident in her declaration in opposition to the motion for summary judgment. (Dec. of Setser, Dkt. 35-2).  In viewing the facts in a light most favorable to Plaintiff, the Court will consider these additional details in resolving the motion for summary judgment.

**MEMORANDUM DECISION AND ORDER - 4**

paperwork and Evans came behind her, started talking to her and then reached in to kiss Setser on the neck.  Setser stood up, flung her chair backwards and yelled at him that she was not the office tramp and did not want to be looked at as a tramp.  No other employees were present in the office.  Evans left the building.  Evans texted Setser and said if Setser did not turn him in, he would quit.  Setser agreed to these terms and said she would give him some time to leave willingly.  After the third incident, Evans did not quit or take steps to leave LHC.

Setser claims the hostile work environment shook her up, caused her to break down crying, made her fear being around Evans and that she might lose her job.  There is no evidence that Evans failed to promote, demoted or changed Setser's job benefits as a result of her failing to return his affection or complaining to him about his conduct.  There is no evidence Evans gave Setser a poor performance evaluation.

When Evans did not resign as promised, Setser claims he began to act increasingly hostile toward her.  Setser claims Evans told her not to come to the office when he was there implying he was afraid he might try to make a move on her and this caused her difficulty in completing her job duties as she needed supplies for patients but did not feel comfortable going to the office to get the supplies. Evans indicated that the patients would be taken care of, but Setser claims the patients were not taken care of so this made her job more difficult.  Setser claims she began making excuses not to come into the office and was eventually forced to resign as she had to watch her back when she was at the office in fear of Evans coming up on her from behind like he had done before.

**MEMORANDUM DECISION AND ORDER - 5**

Setser alleges Evans asked her to take his on-call shift over Memorial Day weekend because he was disgruntled with her.[2]

Setser did not report any of the incidents or other conduct to LHC human resources or any other manager besides her complaints about the conduct directly to Evans. LHC had no complaints from any other employees regarding Evans' behavior. Plaintiff cites to the Deposition of Marcus Macip of LHC for support that reporting the harassment to Setser's manager was sufficient under LHC policies and Evans' failure to report the harassment was his negligence, not Setser's.[3]

Setser emailed Evans a two week notice of her resignation on May 20, 2011. No mention is made of work conditions in her email. The last day Setser had shift work (in part due to her father's medical needs) was May 16, 2011. On May 25, 2011, counsel for Setser sent Evans an email indicating that he represented Setser and that she had been

---

[2]The Court is viewing the facts in a light most favorable to Plaintiff, but does not necessarily find Setser can prove by a preponderance Evans was trying to be difficult in offering Setser the on-call shift on Memorial weekend. Evans is named as a defendant in this action, but there is no evidence he was ever served with the Complaint and he never appeared in the litigation. The incoming text messages recovered from Setser's phone seem to indicate Evans was not trying to make her job difficult, but was trying to give her a final day of employment to turn in equipment and other company property. Regardless, Setser's last day of shift work was May 16, 2011, so she did not take the requested holiday on-call shift. The Court notes Plaintiff objects to the consideration of the texts from Evans but does not deny the texts were from Evans' phone number. For purposes of this motion for summary judgment the texts will be considered simply to establish it is contested as to whether or not the on-call shift request for Memorial Day was a change in her job duties.

[3]The Court cannot locate the cited deposition of Marcus Macip in the record. References to depositions without a reference to the docket number and page number where that portion of the deposition is located makes it difficult for the Court to review the cited materials. The Court was able to locate Ex. 3 from Macip's deposition, but not the actual cited portion of the deposition. *See* Dkt. 35-6.

**MEMORANDUM DECISION AND ORDER - 6**

subject to sexual harassment in her employment such that she could no longer work with Evans.  On May 26, 2011, Setser's counsel transmitted a letter by email alleging sexual harassment.

The emails to Evans were turned over to the LHC Human Resources who promptly initiated an investigation into the sexual harassment allegations. Evans was terminated from his employment for performance reasons on June 30, 2011.

On June 6, 2011, Setser started work at her new job with Liberty Dialysis as a RN.

Setser maintains she did not have internet access away from work and did not know how to contact LHC's human resources department. Setser admits she had received sexual harassment training from a prior employer when she worked in Las Vegas.

On August 28 2010, Setser filed her Complaint in federal court alleging sexual harassment, hostile work environment, battery, intentional infliction of emotional distress. Plaintiff also seeks punitive damages against the named defendants.  Defendant LHC has moved for summary judgment on all causes of action.  Defendant Evans has not appeared in the lawsuit and it is unclear from the record if he was ever served with the Complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."

**MEMORANDUM DECISION AND ORDER - 7**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out

**MEMORANDUM DECISION AND ORDER - 8**

facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.


## ANALYSIS

### 1. Sexual Harassment Claims

Count 1 of Plaintiff's Complaint alleges sexual harassment and Count 2 alleges hostile work environment.  LHC maintains the two causes of action are both sexual harassment claims, not two separate claims.  The Court agrees. A hostile work environment claim is a type of sexual harassment claim under Title VII and the applicable Idaho Code.  *Heustis v. Orsi*, 2007 WL 1797636 (D. Idaho 2007); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998).

**MEMORANDUM DECISION AND ORDER - 9**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII prohibits sexual harassment by a supervisor whether it is based on a "quid pro quo" concept or the overall work environment. "Quid pro quo" harassment exists when employment is dependent on the provision of sexual favors to a supervisor. A hostile work environment can constitute sexual harassment when the work environment is unpleasant and unacceptable based upon the consideration of sex (e.g., jokes, language, unwanted touching). An employer is vicariously liable for the supervisor's actions if there is a "tangible employment action" taken against the victimized employee in either situation. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). If there is no tangible employment action against the complaining employee, an employer may raise an affirmative defense to a sexual harassment claim. *Id.*

## A. Setser's Prima Facie Case

To make a prima facie case of a hostile work environment based on sexual harassment against an employer, a plaintiff must show: (1) he or she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was objectively and subjectively so severe or pervasive as to alter the conditions of employment and create a discriminatory abusive working environment.

**MEMORANDUM DECISION AND ORDER - 10**

*Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007).

LHC argues Setser has failed to establish the three incidents were sufficient to qualify as "severe or pervasive.  LHC says one kiss, two attempted kisses and hug do not rise to the level of "severe or pervasive" conduct.  The Court finds LHC is oversimplifying the facts of this case.

"Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Craig* at 1055. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment."  *Faragher* at 788.  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not generally amount to discriminatory changes in the terms and conditions of employment. The Supreme Court has held that factors a court may consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

In this case, the Court finds Setser has presented undisputed evidence sufficient for a trier of fact to conclude that Evans' conduct created a prima facie case for sexual harassment based upon a hostile work environment. First, it is undisputed Setser was subjected to verbal and physical conduct of a sexual nature.  Second, the conduct was

unwelcome.[4] Third, when the incidents described by Plaintiff are viewed from the perspective of a "reasonable woman," Evans' behavior could be found to be severe, pervasive, threatening, as well as causing interference with Setser's ability to do her job. The Court is convinced that the first unwanted touching and kissing of Setser by Evans, the second unwanted hugging and attempting to kiss Setser by Evans combined with Evans putting his hand up her shirt and attempting to unbutton the pants of a female employee is the type of conduct any reasonable person would find created a hostile work environment.  But there is more.  Multiple verbal statements he wanted to leave his wife and be with Setser, unwanted rubbing of Setser's shoulders on multiple occasions and the third attempt to kiss her when no other employees were in the office is a hostile environment that would affect any employee's ability to feel safe and comfortable doing their job.  Combine these facts with the supervisor's limiting Setser's access to the facility to when Evans was not in the office.  This is additional evidence of the environment interfering with the employee's work performance.  A reasonable juror could find Evans' sexual conduct altered the conditions of employment and created an abusive working environment.  *See Ellison v. Brady*, 924 F.2d 872 99th Cir. 1991).

---

[4]The Court acknowledges Evans maintained in his email to LHC regarding the alleged sexual harassment that the attraction was not one sided, but taking the facts in a light most favorable to Plaintiff, Setser has established through her deposition testimony and declaration that the sexual conduct by Evans was unwelcome.  Plaintiff's counsel notes in his memorandum that Evans has never been located. (Dkt. 35, p.5).

**MEMORANDUM DECISION AND ORDER - 12**

Having found Plaintiff has at least established a prima facie case of a hostile work environment, the Court must next determine if there was tangible employment action taken against Setser.

### B. Tangible Employment Action

An employer is subject to vicarious liability to a victimized employee for actionable sexual harassment or a hostile environment created by the employee's supervisor. *Ellerth* at 765. When no tangible employment action is taken, an employer can raise an affirmative defense to liability and damages. *Id.* The defense has two requirements: "(a) the that employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth* at 761. "A tangible employment action in most cases inflicts direct economic harm. *Id.* 763.

LHC argues there was no 'tangible employment action" taken by Evans or LHC, therefore, the Court should decide no genuine issues of material fact exist that prevent the Court from finding LHC has satisfied the two elements of the affirmative defense. Plaintiff argues she was constructively discharged and this can be considered  a "tangible employment action" making LHC vicariously liable without an affirmative defense.

**MEMORANDUM DECISION AND ORDER - 13**

Alternatively, if no tangible employment action is found, Plaintiff argues genuine issues of material fact remain that prevent the Court from finding as a matter of law LHC has established the affirmative defense.

Constructive discharge occurs if an employee can prove he or she was subjected to intolerable working conditions such that a "reasonable person in his/her position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). In *Suders*, the Supreme Court held genuine issues of material fact existed concerning plaintiff's hostile work environment and her constructive discharge claim. *Id.* at 152. "[H]arassment so intolerable as to cause a resignation may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts." *Id.* at 148.The Supreme Court attempted to distinguish between supervisor conduct and co-worker conduct, finding if the sexual harassment is by a co-worker who is not in a supervisory position, there is less chance of a resignation being deemed a constructive discharge. It is more likely to be a constructive discharge if a supervisor or company official acts to encourage the resignation. *See Robinson v. Sappington*, 351 F. 3d 317 (7th Cir. 1004) (cited in *Suders* as opinion with proper analysis of constructive discharge determination where a judge suggested an employee who was allegedly being sexually harassed by another judge resign was constructive discharge).

Constructive discharge cannot exist in every case an employee decides to resign after being sexually harassed. To do so, would eliminate the affirmative defense for employers established in *Faragher/Ellerth*. Instead, the case law establishes that in order

**MEMORANDUM DECISION AND ORDER - 14**

for a resignation to equate to a tangible employment action, the work conditions must be intolerable. The bar for a finding of constructive discharge is set high "because federal anti-discrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007).

In determining whether conditions are "intolerable," the conditions are measured at the time of the employee's resignation. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994) (alleged harasser was fired two and one-half months prior to employee's resignation and after employee's preferred shift at work was restored so there was no constructive discharge). Waiting until the sexual harassment has ended to resign is not constructive discharge. *Montero v. AGCO Corp.* 192 F.3d 856, 861 (9th Cir. 1999) (employee waiting three to four months after harassment ended to resign is not constructive discharge).

"Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because 'in the "ordinary case, an employee is expected to remain employed while seeking redress.'" *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044,1050 (7th Cir. 2000) (citations omitted). An employee has to show why he had to quit immediately, before he found another job and why his duty to mitigate damages did not require him to remain. *Lindale v. Tokheim Corp.,* 145 F.3d 953, 956 (7th Cir. 1998).

**MEMORANDUM DECISION AND ORDER - 15**

The Court has reviewed the testimony of Plaintiff in her deposition and her declaration.  Setser states she was "uncomfortable" and fearful of being in the office and having Evans come up behind her.  Setser decided to resign after Evans did not follow through on his agreement to resign if she agreed not to turn him in. She figured conditions were not going to change and looked for another job.  She never indicates that Evans made any further sexual advances after May 3, 2011 or that Evans as her supervisor encouraged her to resign.  Evans did not change her job duties.  She was not given an extremely dangerous job to retaliate for spurned advances.  *See Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27, 33 (1st Cir. 2003). There were no simply no changes to the conditions of employment from the last incident on May 3, 2011 to the date Setser filed her two week notice.  Moreover, she gave two weeks of notice and did not quit outright. It appears from the record that she gave her notice after she had found other employment. Clearly, she was willing to continue working after she had given notice of her resignation. Setser did not quit because she had filed a complaint with the Human Resources department which was not being investigated.  The conduct after May 3, 2011 was not simply not " more egregious" than the three incidents that formed the basis of her sexual harassment claim. Being "uncomfortable" and "fearful" does not create an "intolerable" work situation.   The Court finds no reasonable juror could find that Setser has established that work conditions on May 20, 2011 were so intolerable that a "reasonable person in his/her position would have felt compelled to resign." *Pennsylvania State Police v.*

**MEMORANDUM DECISION AND ORDER - 16**

*Suders*, 542 U.S. 129, 141 (2004).   Her resignation will not be deemed a constructive

discharge, so there was no tangible employment action taken again Setser.


### C. Affirmative Defense

Having determined Setser's resignation was not a constructive discharge, the Court

must now determine if LHC is entitled under the undisputed facts of this case to raise the

affirmative defense provided by *Faragher/Ellerth*.  The first prong of the defense is that

the employer exercised reasonable care to prevent and correct promptly any sexually

harassing behavior.  *Ellerth* at 765.  The Court acknowledges that there appears to be no

genuine issue of fact regarding the existence of a sexual harassment policy which

encourages employees to report sexual harassment and indicates sexual harassment is not

acceptable behavior by any employee.  The policy clearly provides a reporting

mechanism and that such complaints will be investigated.  In this case, once reported by

Setser's attorney after her resignation, it is undisputed LHC promptly conducted an

investigation and that Evans was terminated.  It is also undisputed that Setser

acknowledged that she had read the policy (although she testified in her deposition that

she did not actually read the Employee Handbook), she attended training by a human

resources employee that included training on the sexual harassment policy (and that

training was approximately one week prior to the second incident), that the policy

provided an employee could report sexual harassment to a manager or the human

resources department.  It appears from the undisputed record that for purposes of the

**MEMORANDUM DECISION AND ORDER - 17**

motion for summary judgment, the first prong has arguably been satisfied by LHC's sexual harassment policies and procedures combined with employee training.

As to the second prong of the affirmative defense, the Court finds genuine issues of material fact exist regarding whether or not Setser acted "unreasonably" in failing to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Ellerth* at 765. Setser failed to report the alleged sexual harassment to the human resources department of LHC and instead only complained to her manager who was also the harasser. It may not be reasonable for an employee complaining of the sexual harassment to believe complaining to the very manager who is sexually harassing said employee would satisfy the goal of allowing an employer to investigate and respond to complaints of sexual harassment. Especially when the first complaint to Evans about inappropriate conduct did not stop the sexual harassment. Moreover, no complaint was filed when the second incident occurred approximately one week after training by the Human Resources officer.

It may or may not have been unreasonable for Setser to agree to allow Evans to quit instead of reporting the harassment. But when Evans did not quit, Setser still did not contact the Human Resources department. This is in light of the fact that the policy provides for the complaint to alternatively be made to the human resources department. The jury will have to determine if Setser acted unreasonably when she claims she was not able to get the phone number for LHC Human Resources department. The fact finders can also weigh the fact that Setser admits she had been trained regarding sexual

**MEMORANDUM DECISION AND ORDER - 18**

harassment when she worked for a prior employer, she listed Evans as a reference when she applied for a new job, and she gave no notice of sexual harassment until after she had filed her notice of resignation in determining whether Setser acted unreasonably.  For all these reasons, it is clearly disputed as to whether Setser acted unreasonably when she failed to  comply the LHC policy meant to protect her from harm.[5]

### 2. Battery

LHC argues Plaintiff has failed to establish the alleged inappropriate actions by Evans were related to his work assignments.  The Court agrees the employer can only be vicariously liable for intentional torts by its employees when the force is not "unexpectable by the master."  The employee "must be engaged in some type of work that is assigned to him or her in the general sense of doing something to serve the employer."  *Richard J. & Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, 983 p.2d 834, 838 ((Idaho 1999) (citing Restatement (Second) of Agency § 228).

Plaintiff argues that Evans was performing his supervisory duties when he kissed, tried to kiss and hugged Setser.  The Court respectfully disagrees that there is evidence that LHC assigned Evans duties to sexually harass employees as part of his job as a

---

[5]In LHC's memorandum it argues the New Employee Orientation Binder states "If the employee is uncomfortable, for whatever reason, with submitting the complaint to the supervisor, the complaint should be submitted to the Manager of Human Resources."  Dkt. 29, p.5 (citing to Delahoussaye Declaration, ¶ 7, Ex. 1).  The Court could not find this quoted sentence in the body of Ex. 1 to Delahoussaye Declaration, Dkt. 31-1, which is the "Acknowledgement [sic] of Company Policies."

**MEMORANDUM DECISION AND ORDER - 19**

supervisor.  There is no evidence Evans was acting in any other capacity than purely

personal when he kissed and attempted to kiss and hug Plaintiff.  There is no respondeat

superior liability when an intentional tort is committed by an employee who "acts with

personal motives in no way connected to the employer's interest."  *Podolan v. Idaho*

*Legal Aid Servs., Inc.*, 854 P.2d 280, 288 (Idaho Ct. App. 1993).  The record before the

Court does not support a finding that Evans was acting on behalf of LHC or in any way

advancing the interests of LHC by sexually harassing Setser.  Since LHC had no notice of

sexual harassment prior to Setser leaving LHC employment, it is impossible for LHC to

have known about the sexual abuse and condoned it.  The record reflects Evans was

acting for purely personal reasons, not in a work related manner. Therefore, the claim of

battery against LHC must be dismissed as a matter of law.


**3. Intentional Infliction of Emotional Distress**

LHC argues the claim for intentional infliction of emotional distress must be

dismissed as Plaintiff has not established the undisputed conduct of Evans rises to the

level of extreme and outrageous and that Plaintiff's distress was severe.  Plaintiff argues a

jury should decide if the conduct rises to a level of extreme and outrageous conduct and

whether Setser's emotional distress was severe.

In Idaho, the elements for a claim of intentional infliction of emotional distress are:

(1) the defendant acted intentionally and recklessly; (2) the defendant's conduct was

extreme and outrageous; (3) there was a casual connection between the wrongful conduct

**MEMORANDUM DECISION AND ORDER - 20**

and the emotional distress; and (4) the plaintiff's emotional distress was severe. *Alderson v. Bonner*, 132 P.3d 1261, 1267 (Idaho Ct. App. 2006).  A defendant's conduct must be "atrocious and beyond all possible bounds of decency [such] that it would cause an average member of the community to believe it was outrageous." *Edmondson v. Shearer Lumber Prods.*, 75 F.3d 733, 740-41 (Idaho 2003). Intensity and duration of the distress are also factors to be considered in determining whether the plaintiff's emotional distress was severe. *Alderson* at 1269.

Defendant cites to cases outside the Ninth Circuit for the proposition that "[a]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Andrews v. City of Philadelphia*, 895, F.2d 1469, 1487 (3rd Cir. 1990).  Plaintiff has provided no case law indicating the type of undisputed sexual contact and attempted contact in this case rises to the level of extreme and outrageous conduct.

In *Yeargain v. Laundy*, 2008 WL 314414, *6 (D. Idaho 2008), the court found unjustifiable conduct does not rise to the level of extreme and outrageous conduct.  The court also states that the district court may grant summary judgment when the alleged facts could not reasonably be regarded as so extreme or outrageous as to permit recovery for intentional infliction of emotional distress. *Id.* at *7 (citing *McKinley v. Guaranty Nat'l Ins. Co.*, 159 P. 3d 884, 891 (Idaho 2007).

In viewing the facts in a light most favorable to Plaintiff, the Court is convinced no reasonable jury could find that LHC's conduct was extreme or outrageous.  LHC had a

policy and when informed of the alleged sexual harassment, immediately investigated. As to LHC being vicariously liable for Evans' conduct, the Court again finds the alleged contact does not rise to the level of "atrocious and beyond all possible bounds of decency [such] that it would cause an average member of the community to believe it was outrageous." *Edmondson* at 741.  Moreover, Setser's claim of crying, being fearful and being upset does not rise to the level of "severe" emotional distress for an extended duration.  As a matter of law, the claim for intentional infliction of emotional distress is dismissed.

## 4. Motions to Strike

The Court has reviewed the contested portions of the declarations in this matter. The Court has noted in footnotes when it has considered the contested facts.  The Court is allowed to consider all admissible evidence in resolving a motion for summary judgment. In this case, the Court considered some of the challenged facts as such facts may be admissible at trial (even though they will also be subject to cross examination regarding why such information was not disclosed during a deposition).   At this stage in the litigation it is not known if Evans will or will not be a witness at trial and whether the one-sided text messages will be admissible.  Other contested facts were not deemed relevant to the Court's summary judgment ruling. For these reasons, the Court will deny without prejudice the motions to strike and such challenges can be raised as objections or motions in limine at trial.

**MEMORANDUM DECISION AND ORDER - 22**

## CONCLUSION

While the Court finds Plaintiff has for purposes of summary judgment established a prima facie case of sexual harassment, genuine issues of material fact exist regarding whether the fact finder after weighing all the evidence and credibility of the witnesses will find the alleged harassment was "severe and pervasive." If the jury finds the conduct by Evans was "severe and pervasive," then the jury will also have to determine if LHC has proven the elements for the affirmative defense to apply. These disputed issues must be determined by a jury and summary judgment is denied on the sexual harassment claims in Counts 1 and 2.

As to the battery and intentional infliction of emotional distress counts, the Court finds as a matter of law, these claims must be dismissed.

## ORDER

**IT IS ORDERED:**

1. Defendant LHC's Motion for Summary Judgment (Dkt. 28) is **GRANTED IN PART AND DENIED IN PART** consistent with this Memorandum Decision and Order. The jury trial shall proceed on the sexual harassment claim and Defendant LHC's alleged affirmative defense on at 9:30 a.m. on May 13, 2014 at the Federal Courthouse in Pocatello, Idaho.

**MEMORANDUM DECISION AND ORDER - 23**

2.   Defendant LHC's Motion to Strike (Dkt. 28) and Plaintiff Setser's Motion to

Strike (Dkt. 39) are **DENIED WITHOUT PREJUDICE**.

DATED:  **March 11, 2014**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 24**